# CIRCUIT COURT OF BOTETOURT COUNTY

Trustees of Cave Rock
Brethren Church et al.

v.

The Church of the Brethren et al.

June 30, 1976

Case No. 1802

BY JUDGE ROSCOE B. STEPHENSON, JR.

Complainants, Trustees of Cave Rock Brethren Church and James H. Kimrey, its pastor (sometimes hereinafter referred to as "the local church"), seek to enjoin defendants, The Church of the Brethren and certain officers and members thereof (sometimes hereinafter referred to as "the denomination church"), from interfering with complainants' use and control of certain church property and their worship services conducted therein. The issue to be decided is whether the church property is owned and controlled exclusively by the local church or, on the other hand, does the denomination church have a proprietary interest therein. Stated differently, is the local church autonomous or is it subject to the control of the denomination church?

The local church was founded in 1921 by a man named William E. Boggess, the father of Maybelle Conner, one of complainants' witnesses. According to Mrs. Conner, her father started a Sunday School for people residing in the vicinity. In the beginning, the church was nondenominational and it was known as "Cave Rock Union Church." Mr. Boggess and his family were Methodist, one family of Brethren attended, and some who attended were Baptist. The present church building was erected while the church was still a Union (nondenominational) Church. From 1921 to 1955, those

attending Cave Rock paid their dues to the Troutville Church of the Brethren. The evidence suggests that, during this period of time, Cave Rock was a mission or outpost of the Troutville Church of the Brethren. Those of the Brethren faith or persuasion who attended Cave Rock maintained their church membership with the Troutville Church. The Troutville Church, at that time, was affiliated with The Church of the Brethren (the denomination church).

The minutes of the District Conference (then the First District of Virginia and now called Virlina District) of the Church of the Brethren, dated July 24-26, 1955 (Defendant Exhibit 8) reveals the following: (1) that, by a writing dated January 21, 1955, signed by the said Maybelle (Mrs. Eugene B.) Conner, as acting clerk, the Cave Rock Church asked the Troutville Church of the Brethren "as a body to grant us the full status of a congregation . . ." (2) that the Troutville Church of the Brethren responded saying "[t]his is to certify that the Troutville Church of the Brethren, in regular Church Council, on March 13, 1955, accepted the recommendation of the District Ministerial Board and granted the Cave Rock Church their request to organize as a separate congregation" and (3) that the District Conference acted favorably on Cave Rock's request as shown by its minutes which read "In the light of the request from the Cave Rock Church and the permission and approval by the Troutville Church, the Conference passed the following motion: 'That we accept this church as an organized congregation in the District and that it be under the supervision of the Ministerial Board (now the Commission on Church Extension and Missions) for a period of two years.' The delegates to this conference were seated."

From July 24, 1955, until shortly before this suit was commenced, Cave Rock (the local church) remained affiliated with The Church of the Brethren (the denomination church).

The evidence established that The Church of the Brethren (the denomination church) consists of numerous local churches. The denomination church is governed by what is termed the "Annual Conference of the Church of the Brethren." Between the local churches and the annual conference are the several district conferences. The purpose of the district conference, as expressed and affirmed by the conference which admitted Cave Rock as a separate congregation (Defendant Exhibit pp. 5 to 12), "is to provide education, inspiration, and fellowship; to vitalize the local church program; to interpret the Regional and Brotherhood program; to transact the business of the district; and to serve as a channel by which the concerns of local congregations are passed on to the annual conference of the Church of the Brethren." Each local church is represented at both the District and Annual Conferences by elected delegates.

The denomination church operates under a constitution known as the "Manual of Brotherhood, Organization, and Polity." This manual has been revised from time to time, the most recent revision being dated September 1970. (Defendant Exhibit 6.) The authority, jurisdiction, and function of the annual conference is shown by the following excerpt taken from the manual:

> Annual Conference is the highest and final legislative authority of the Church of the Brethren in all matters of procedure, program, polity, and discipline. The authority of conference has its source in the delegates elected by local congregations and districts who come together as a deliberative body under the guidance of the Holy Spirit.
>
> The Conference is the final source of appeal in adjusting difficulties and solving problems that arise in the church. . . .
>
> The voting body consists of two sets of delegates, those representing local congregations and those from the districts who also serve as the Standing Committee. All members of the Church of the Brethren present have full liberty to participate in the discussions, but only delegates vote.

Under Section D of the Manual which deals with "The Local Church" is found the following:

> The congregation shall covenant to support faithfully the program of the Church of the Brethren, recognizing Annual Conference enactments of the Church of the Brethren as having governing force in its life, and shall remain a member of the Church of the Brethren or its successor. The local church shall send delegates to those official conferences of the Church of the Brethren in which it is entitled to have representation. In case of strife or division, if any part of the congregation refuses to abide by its obligations as a member of the Church of the Brethren, that part of the congregation, whether a majority or minority of its membership which continues in unity with the Church of the Brethren, shall be recognized as the lawful congregation and shall continue in possession of all the property of the congregation.
>
> If the congregation (a) disbands, (b) departs from membership in the Church of the Brethren, or (c) so decreases in members and financial strength as to render the congregation

unable to fulfill its purpose, the district of the Church of the Brethren in which it is located or its successor shall have the right to take charge and control of all property and thereafter to hold, manage, and convey the same at the discretion of the district.

Section F of the Manual, entitled "Property Holdings and Financial Resources," provides, *inter alia*, that title to all local church property is held by local trustees "in trust, for the teaching and dissemination of the gospel of Jesus Christ, according to the beliefs, practices, and doctrines of the Church of the Brethren as set forth and promulgated from time to time by Annual Conference." It further provides that "[w]hen it is deemed wise or advantageous to the local church to sell or otherwise dispose of a particular piece of property, the conveyance should be executed by the commission of stewards (trustees) in its trust capacity, under the direction of the local church board and with the approval of the district board of the district in which the church is located." Section F also states that, where a local church is closed or the property abandoned, title vests in the district board, as trustees for the district.

Section E of the Manual (Defendant Exhibit 6), entitled "The Ministry and Counseling and Discipline," deals with the licensing and ordaining of ministers of the Church of the Brethren which is controlled by the district.

In 1973, the Virginia District licensed and appointed James Kimrey as pastor of the Cave Rock Church on condition that he participates in various training and education programs of the district. Because Mr. Kimrey failed to comply with these conditions, the district, in January, 1976, placed him on probationary status as a licensed minister.

On October 23, 1974, the local church adopted a Constitution (Complainant Exhibit B) which provides, *inter alia*, that "all authority shall be vested in the congregation and the church shall not be subject to any other body of government, save that of the 'laws of the Commonwealth of Virginia'," and that the "title of the property shall be vested completely in Cave Rock Church of the Brethren."

In February 1976, Mr. Kimrey's license was suspended by the District. The reason given was his failure to participate in the ongoing study program and other programs of the denomination church.

Also in February 1976, the local church, by a vote of 38 to 5 voted to sever its ties with the Church of the Brethren and to thereafter be an independent church and also changed the name from "Cave Rock Church of the Brethren" to "Cave Rock Brethren Church."

By an order entered *ex parte* by this court on March 1, 1976, the newly elected trustees of "Cave Rock Brethren Church" were appointed and the new name of the church was approved. Due to this chancery suit and the issues before the court, a subsequent order was entered staying the operation and effect of the order of March 1, 1976.

The controversy between the local church majority and the denomination church (which supports the minority of local members) came to a head when the minority sought to use the church building for a worship service on Sunday, February 29, 1976, at 2:00 o'clock, P.M., and by this suit the local church (i.e., the majority of its members and its pastor) seeks to enjoin and restrain the denomination church, its officers, and membership, from using or attempting to use said building and from interfering with the worship services conducted by the complainants (the local church).

Complainants contend that the local church is an independent, autonomous congregation and that, pursuant to Va. Code § 57-9, when a division occurs in such a church, the majority of its members entitled to vote may decide the right, title, and control of all property held by the church trustees.

> § 57-9. *How property rights determined on division of church or society.* If a division has heretofore occurred or shall hereafter occur in a church or religious society, to which any such congregation is attached, the communicants, pewholders, and pewowners of such congregation, over eighteen years of age, may, by a vote of a majority of the whole number, determine to which branch of the church or society such congregation shall thereafter belong. Such determination shall be reported to the circuit court of the county, or circuit or corporation court of the city wherein the property held in trust for such congregation or the greater part thereof is; and if the determination be approved by the court, it shall be so entered in its chancery order book, and shall be conclusive as to the title to and control of any property held in trust for such congregation, and be respected and enforced accordingly in all of the courts of this State. If a division has heretofore occurred or shall hereafter occur in a congregation, which in its organization and government is a church or society entirely independent of any other church or general society, a majority of the members of such congregation, entitled to vote by its constitution as existing at the time of the division, or where it has no written

constitution, entitled to vote by in ordinary practice of custom, may decide the right, title, and control of all property held in trust for such congregation. Their decision shall reported to such court, and if approved by it, shall be so entered as aforesaid, and shall be final as to such right of property so held.

Va. Code 1919, § 49; 1972, c. 825.

They rely upon *Baber v. Caldwell*, 207 Va. 694, 152 S.E.2d 23 (1967).

Defendants contend that the local church is subject to the control of a super-congregational body and that, therefore, the local church, acting alone, cannot deprive the denomination church of its property interest.

They rely upon *Norfolk Presbytery v. Bollinger*, 214 Va. 500, 201 S.E.2d 752 (1974), and Va. Code § 57-15.

§ 57-15. *Proceeding by trustees or members for similar purposes.* The trustees of such church diocese, congregation, or church or religious denomination, or society or branch or division thereof, in which is vested the legal title to such land held for any of the purposes mentioned in § 57-7, may file their petition in the circuit court of the county or the city wherein the land, or the greater part thereof held by them as trustees, lies, or before the judge of such court in vacation, asking leave to sell, encumber, extend encumbrances, improve, exchange the land or a part thereof, or settle boundaries between adjoining property by agreement; and upon evidence being produced before the court, or the judge thereof in vacation, that it is the wish of the congregation, or church or religious denomination or society, or branch or division thereof, or the constituted authorities thereof having jurisdiction in the premises, or of the governing body of any church, diocese, to sell, exchange, encumber, extend encumbrances, improve the property or settle boundaries by agreement, the court, or the judge thereof in vacation, shall make such order as may be proper, providing for the sale of such land, or a part thereof, or that the same may be exchanged, encumbered, or improved, or that encumbrances thereon be extended, and in case of sale for the proper investment of the proceeds or for the settlement of such boundaries by agreement. When any such religious congregation has become extinct or has ceased to occupy such property as a place of worship, so that it may be regarded as abandoned property, the petition may

be filed either by the surviving trustee or trustees, should there be any, or by any one or more member or members of such congregation, should there be any, or by the religious body which by the laws of the church or denomination to which the congregation belongs has the charge or custody of the property, or in which it may be vested by the laws of such church or denomination; and the court, or the judge thereof in vacation shall make a decree for the sale of the property or the settlement of boundaries between adjoining properties by agreement, and the disposition of the proceeds in accordance with the laws of the denomination and the printed acts of the church or denomination issues its authority, embodied in book or pamphlet form, shall be taken and regarded as the law and acts of such denomination or religious body. The court, or the judge thereof in vacation, may make such order as to the costs in all these proceedings as may seem proper.

Va. Code 1919, § 1924, p. 535, 1938, p. 179; 1962, c. 516; 1974, c. 138.

Therefore, the court must first determine whether, the local church is autonomous or subject to the control of a super-congregational body. If it is not autonomous, the court must then determine if the denomination church has a proprietary interest in the Cave Rock property.

The evidence clearly shows that the local church requested that it be recognized as a congregation of the Church of the Brethren and that the district conference accepted Cave Rock "as an organized congregation in the District and that it be under the supervision of the Ministerial Board." Thereafter, the local church had the right to elect delegates to represent it at district and annual conferences of the Church of the Brethren, and it was subject to the constitution ("Manual of Brotherhood, Organization, and Polity") of the Church of the Brethren.

The local church further contends that it is not bound by either the constitution of the Church of the Brethren (Manual of Brotherhood, Organization and Polity), or by the Plan of Organization of the Virlina District, giving as its reason that the local church had no knowledge of their existence and had not consented thereto or acquiesced therein. The court is of opinion that this contention is without merit. All local churches are bound by the actions of the District and Annual Conferences.

The court holds, therefore, that the local church is not autonomous but is subject to the government and control of the Church of the Brethren (a super-congregational church). Any action taken by the local church in

contravention of the constitution of the Church of the Brethren is of no effect. Therefore, the provisions of the constitution adopted by the local church on October 23, 1974, and the amendments adopted February 23, 1976, which are repugnant to the provisions of the "Manual of Brotherhood, Organization, and Polity" are void and of no effect.

The court must next determine if the Church of the Brethren has a proprietary interest in the Cave Rock property. In determining a dispute over church property it is proper for the court to consider "the statutes of Virginia, the express language in the deeds, and the provisions of the constitution of the general church." *Norfolk Presbytery v. Bollinger, supra,* 214 Va. at 505, 201 S.E.2d at 756.

As previously pointed out, the constitution of the general church (Defendants Exhibit 6) provides that "[i]n case of strife or division, if any part of the congregation refuses to abide by its obligations as a member of the Church of the Brethren, that part of the congregation, whether a majority or minority of its membership, which continues in unity with the Church of the Brethren, *shall be recognized as the lawful congregation and shall continue in possession of all the property of the congregation*" (italics supplied) and that constitution further states that, when a local church desires to dispose of its property, it shall be done "under the direction of the local church board *and with the approval of the district board in the district in which the church is located*" (italics supplied), and, where a local church is closed or abandoned, title thereto vests in the district board.

The general church (Church of the Brethren) does have a proprietary interest in the Cave Rock property which cannot be terminated by the independent action of the local church.

The injunction sought by complainants is denied, the order of March 1, 1976, changing the name of the Cave Rock Church of the Brethren to Cave Rock Brethren Church is vacated, set aside, and declared of no effect; and the pastor, members, and officers of the Cave Rock Church of the Brethren shall do nothing which is violative of the property rights of the general church as stated in its constitution ("Manual of Brotherhood, Organization, and Polity").